UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JACK V. SHER,

                              Plaintiff,

                                                    Case # 13-CV-6168-FPG

v.

                                                    DECISION AND ORDER

DAVE BONOCCI, JAMES SERIO, and
MONROE SCHOOL TRANSPORTATION,

                              Defendants.

## INTRODUCTION

*Pro se* Plaintiff Jack Sher ("Mr. Sher") has filed a Motion to "litigate for the Plaintiff from Default Judgment on 6/24/13," along with a Motion for Leave to Proceed *in forma pauperis*. ECF Nos. 29, 30. To fully understand the genesis of these applications, it is necessary to review the relevant history of this case in some detail.

## BACKGROUND

This case was commenced on March 28, 2013, when Mr. Sher brought suit against his former employer, Monroe School Transportation, and two of its corporate officers: CEO Dave Bonocci and COO Jim Serio. ECF No. 1. Mr. Sher sought a default judgment against Defendants on July 15, 2013, and the Court denied that application on July 19, 2013. ECF Nos. 9, 10.

On August 15, 2013, Mr. Sher and Patrick Naylon, Esq., as attorney for Defendants, appeared before United States Magistrate Judge Jonathan W. Feldman to discuss a potential settlement of this matter. The parties did not finalize a settlement on August 15, 2013, but on August 23, 2013, Mr. Sher and Mr. Naylon again appeared before Judge Feldman to discuss a settlement.

During the August 23, 2013 appearance, Mr. Sher stated that he was thinking of appealing the Court's decision that denied his application for a default judgment.  After some discussion, Judge Feldman said to Mr. Sher[1]:

> My understanding was, based on what we talked about last time, that if we were able to settle the case, that I believe the Defendants were going to take the position that it's settled. That you weren't going to be able to preserve or carve-out this default judgment issue. That if you settle the case, you were going to give up your right to litigate this case forever on all fronts, whether it's in front of me, or Judge Geraci, or the Second Circuit, or the Supreme Court. The case would be over in return for whatever agreed upon settlement amount you and Mr. Naylon arrived at.

During the nearly thirty minute appearance, Judge Feldman asked Mr. Sher if he had enough time to consider whether he wanted to accept the Defendants' settlement offer, and told Mr. Sher to "take as much time as you want. You have the right to go forward with this case."

The parties continued to discuss the details of the proposed settlement, and Mr. Naylon stated that he asked to have the appearance in open Court:

> to make sure that Mr. Sher knows all of the implications of settlement. One of the implications would be that the case be discontinued, on the merits, with prejudice, and be gone once and for all. Part and parcel of that it is any appeal, any prior rulings, they are done…as a matter of procedure, when the case is discontinued, you don't have the right to appeal any prior orders or rulings.

The proceedings before Judge Feldman make clear that Mr. Sher was well versed on the details of his pending case.  Judge Feldman commented that Mr. Sher was "much more prepared than the average *pro se* litigant I see in Court."  After further discussions about the proposed

---

[1]  The August 23, 2013 appearance before Judge Feldman has not been transcribed. The quotations cited in this decision are taken from the Court's review of the audio recording.

settlement, Judge Feldman again asked Mr. Sher if he wanted more time to think about accepting the settlement, but Mr. Sher declined.

Mr. Sher's statements demonstrate that he fully understood that by accepting the settlement, he would forever waive any potential challenge to the Court's denial of his default judgment application. Specifically, Mr. Sher told Judge Feldman "I know I'm giving up potentially a lot of money if I happen to be right." Mr. Sher described what he believed he could potentially receive in damages if the case went forward and he succeeded, and discussed the potential to receive greater compensatory damages in the form of back pay, and the potential of receiving punitive damages. Knowing these facts, Mr. Sher decided to accept the settlement.

Indeed, Mr. Sher told the Court that "down the road that I probably will feel bad that I have accepted today, but I need the money, desperately, possibly overrides the fact that I may be successful way down the road, and will have to struggle for a very long time before it's resolved. So I'd rather take the money now, settle the case, and go that route."

After Mr. Naylon again described the full details of the settlement, Mr. Sher told Judge Feldman that he did not want more time to consider the settlement, and that he agreed to the settlement terms. When Mr. Sher commented again that he was "giving up a lot if I happen to be right," Judge Feldman offered to have a lawyer meet with Mr. Sher to give him advice and an opinion on whether he could ultimately succeed in challenging the Court's denial of his default judgment application. Judge Feldman told Mr. Sher that this lawyer would be appointed to him at no charge, and would be for the limited purpose of a consultation regarding the previously denied default judgment application. Mr. Sher initially accepted Judge Feldman's offer, but then asked "does that mean I can't get the [settlement] check today?" Judge Feldman told Mr. Sher that was correct, and Mr. Sher said "I can't afford to wait…I need the check today."

To be certain that Mr. Sher was making an informed judgment, Judge Feldman told Mr. Sher that "you're not going to be able to say, after you walk out of here, you know what? I should have taken the Judge up on his offer, or I should have researched…," when Mr. Sher interrupted Judge Feldman and said "I understand. I have my own private reservations, but I agree to the terms of the settlement."

The parties then signed the settlement agreement that had been previously prepared, and Judge Feldman accepted the settlement.  Specifically, Judge Feldman stated:

> The case is now settled under all the terms we've discussed. I think based on the three Court appearances we had I'm absolutely convinced that you're competent and capable of understanding the terms of the settlement agreement, that you do understand the terms of the settlement agreement, that you're extremely knowledgeable about the facts of your case and the issues you're giving up, and your belief as to the merits of the case, and that the settlement is therefore confirmed.

Following that appearance, both Mr. Sher and Mr. Naylon also executed a Stipulation of Discontinuance, which provided that:

> **IT IS HEREBY STIPULATED AND AGREED**, pursuant to F.R.C.P. 41(a)(1)(A)(ii), that Plaintiff, Jack V. Sher, voluntarily dismisses the above-captioned action, without a court order, with prejudice, and that by and between the undersigned, who have appeared in this action, that any claims, counterclaims, and cross-claims raised or not raised by and between the parties, be and the same hereby are discontinued as to each of the parties on the merits, and without costs or fees of any kind, as to either party as against the other.

The Court endorsed the parties' Stipulation on August 28, 2013, and the Clerk of Court entered judgment and closed the case that same day.  ECF Nos. 17, 18.

On October 18, 2013, Mr. Sher filed a Notice of Appeal, which, despite the lengthy discussion with Judge Feldman on August 23, 2013, purported to appeal the Court's prior denial of Mr. Sher's application for a default judgment to the Second Circuit.  ECF No. 20.  Defendants moved to dismiss the appeal, and the Second Circuit granted that application and dismissed the

appeal on February 20, 2014.  ECF No. 22.  Mr. Sher filed an additional Notice of Appeal on August 5, 2014, again attempting to appeal the denial of his application for a default judgment. ECF No. 23.  That appeal was similarly dismissed by the Second Circuit on October 30, 2014. ECF No. 28.

Subsequently, Mr. Sher brought this application to "litigate for the Plaintiff from Default Judgment on 6/24/13," with an accompanying motion to proceed *in forma pauperis*.  ECF Nos. 29, 30.

DISCUSSION

"A settlement stated on the record is one of the strongest and most binding agreements in the field of the law and is thus entitled to substantial deference." *Medinol Ltd. v. Guidant Corp.*, 500 F. Supp. 2d 345, 353 (S.D.N.Y. 2007) (citation and internal quotation omitted). Further, "settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999).  In that regard, "it is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 445 (2d Cir. 2005) (citation omitted).

First, a default judgment was never entered in this case, so Mr. Sher's application to "litigate for the Plaintiff from Default Judgment on 6/24/13" is somewhat puzzling.  Indeed, Mr. Sher is certainly aware of the fact that a default judgment was never entered, since the denial of Mr. Sher's default judgment application has been a recurring issue in this case and was discussed at length before Judge Feldman on August 23, 2013.  The Court assumes that what Mr. Sher really seeks from this application is to have the Court enter a default judgment and then to award him damages. However, such an application is precluded by the parties' settlement and Stipulation of Dismissal.

The record makes clear that on August 23, 2013, Mr. Sher entered into a clear, voluntary, explicit, and unqualified settlement on the record in open court before Judge Feldman.  During that appearance, opposing counsel recited the terms of the agreement on the record, and Mr. Sher expressly agreed on the record to those terms and to the dismissal of the case.  That settlement was later reduced to writing, and both Mr. Sher and opposing counsel signed a stipulation dismissing the case.  That stipulation explicitly provided that "any claims, counterclaims, and cross-claims raised or not raised by and between the parties, be and the same hereby are discontinued."   ECF No. 17.   As a result, to the extent Mr. Sher had *any* claim against Defendants – by way of a default judgment or otherwise – they were extinguished by the settlement of this case.

Mr. Sher's belief that he was entitled to a default judgment is not new, and indeed, this issue was discussed at length during the settlement conference before Judge Feldman.  Mr. Sher stated several times that he understood that by settling this case, he would forever lose the opportunity to appeal or challenge the Court's denial of his default judgment application.  It was also clear that Mr. Sher thought out his decision to accept the proposed settlement and forego any potential challenge.  Mr. Sher observed that he could be "giving up a lot if I happen to be right," and even acknowledged that "down the road that I probably will feel bad that I have accepted today."  These statements conclusively demonstrate that Mr. Sher knew exactly what he was doing when he entered into the settlement agreement, and as Judge Feldman stated on the record, that Mr. Sher was "competent and capable of understanding the terms of the settlement agreement," that he "do[es] understand the terms of the settlement agreement," and that he was "extremely knowledgeable about the facts of [his] case and the issues [he was] giving up, and [his] belief as to the merits of the case."  Mr. Sher accepted the Defendant's settlement offer, and he is bound by that agreement.  Mr. Sher may currently regret that he accepted the settlement

offer, but such a change of heart cannot undo the parties' agreement to settle and dismiss this case.

Simply put, there are no issues that can be litigated regarding this case, and the case is over for all purposes.

<u>CONCLUSION</u>

For all of these reasons, Mr. Sher's application to "litigate for the Plaintiff from Default Judgment on 6/24/13" (ECF No. 29) is DENIED, and the accompanying Motion for Leave to Proceed *in forma pauperis* (ECF No. 30) is DENIED AS MOOT, since this case is closed, and will remain so.

IT IS SO ORDERED.

Dated: Rochester, New York
        January 6, 2017

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court